DUFOUR *v.* CONTINENTAL SOUTHERN LINES, INC.

Dec. 14, 1953

No. 38971 46 Adv. S. 33 68 So. 2d 489

*Pyles & Tucker*, Jackson, for appellant.

298

*Stevens & Cannada,* Jackson, for appellee.

300

APPELLANT IN REPLY.

Holmes, J.

The appellant, E. M. Dufour, sued the appellee, Continental Southern Lines, Inc., in the Circuit Court of the First Judicial District of Hinds County for damages for an alleged breach of contract of employment, claiming that he had been wrongfully discharged in violation of the terms of a collective bargaining agreement entered into between the appellee and Southern Association for Transportation Employees, of which he was a member. The agreement, by its terms, was made effective February 1, 1950, and provided for its continuance in force for the term of 32 months thereafter, and covered employees in the bargaining unit. The declared purpose of the agreement was to provide orderly collective bargaining relations and prompt and equitable disposition of grievances, to maintain fair wages, hours, and other working conditions, to prevent strikes and lock-outs, and to promote good relations between the company and employees, and observance of company rules for their mutual benefit.

Under the terms of the agreement, the appellee recognized the association as the duly designated and sole collective bargaining representative with respect to wages, hours, and working conditions for bus operators.

Section 3 of Article I of this agreement provided: "The association recognizes the inherent rights and privileges of the company to manage, operate and conduct its business and agrees that the employees will abide and be governed by all rules, orders, bulletins, and regulations issued by the company not contrary to or not conflicting with this agreement. The right to hire, promote, discharge, or discipline for cause and to maintain discipline and efficiency of employees is the sole responsibility of the company." It is provided in Section 3 of Article X of the agreement that an employee shall not be disciplined or dismissed from service, nor shall entries be made against his record, without sufficient cause, and that he shall receive a written statement of the charges against him. It is further provided in this section that any employee having been disciplined or dismissed from service may demand in writing a hearing within fifteen days from date of notification by the company of discipline or dismissal and that his failure to file such written demand for a hearing and a written statement of his grievances within such time shall constitute a waiver and forfeiture of any claim.

The declaration alleged the employment of the appellant by the appellee and his wrongful discharge in violation of the aforesaid collective bargaining agreement, and demanded damages in the sum of $3,369.29 for the alleged breach of the appellant's contract of employment. The appellee answered, denying that the appellant had been wrongfully discharged and pleading several affirmative defenses. It averred that under the collective bargaining agreement it had the right to discharge the appellant upon the grounds that the appellant had violated one of the rules promulgated by the company, reading as follows: "Do not pull to the left to avoid head-on collision. It is safer to pull to the right and stop." It was further averred in the answer as an affirmative defense that under the collective bargaining

agreement it was provided that before an employee could be dismissed for cause he should receive a written statement of the charges against him and that upon his dismissal from service or discipline, he might demand in writing a hearing within fifteen days and his failure so to do and file a statement of his grievances within such time would constitute a waiver and forfeiture of any claim, and it was further averred that the appellant had failed to comply with this requirement of the agreement and had, therefore, waived and forfeited any claim against the appellee for his alleged wrongful discharge. In this connection, it was averred in the answer that the appellant had filed a complaint with the National Labor Relations Board in New Orleans, complaining of his discharge, but had later withdrawn the same and that the National Labor Relations Board was the proper forum to hear and determine the complaint set out in the declaration. As a further affirmative defense, it was averred by the appellee that the regulations of the Interstate Commerce Commission to which appellee was subject, provided that motor carriers in continuing drivers in their service should give due consideration to violations of laws or regulations governing the operations of motor vehicles of which the driver is guilty, especially as to those violations which tend to establish a disregard for regulatory requirements and for the public safety, and the appellee further averred that the appellant was guilty of the violation of one of its rules and that to continue the appellant in its employment under such circumstances was a violation of the regulations promulgated by the Interstate Commerce Commission. In an amended answer, the appellee averred as an affirmative defense that the appellant on the occasion resulting in his discharge was violating certain statutes of the State of Louisiana, which required the driver of a vehicle to drive upon the right half of the highway and as closely as possible to the right hand edge or

curb of the highway unless impracticable to travel on such side of the highway, and that such violation constituted justification for the appellant's discharge.

Upon the trial of the case and at the conclusion of the testimony of the appellant, who was the only witness, the appellee made a motion to exclude the testimony and direct a verdict for the defendant, and this motion was sustained and judgment entered in favor of the appellee, and from this judgment the appellant appeals.

The testimony of the appellant discloses the following: He was employed by the appellee as a bus driver in September, 1947, and continued in such employment until September 28, 1951, when he was taken out of the service, and on October 8, 1951, he was given notice of his discharge. The ground of his discharge, as stated in the notice, was that he had turned left to avoid an accident when a car pulled into his lane of traffic in violation of one of the rules of the appellee. The notice of discharge was signed by C. S. Prothro, regional manager for the appellee, who stated in the notice of discharge that he was convinced that good driving did not dictate the course taken by the appellant and that the appellant had, without thinking, tried to avoid the accident instead of braking his bus. The happenings from which appellant's discharge resulted occurred at about 1:40 A. M. on the morning of September 27, 1951, at a time when the appellant was driving one of the busses of the appellee on his regular run from Alexandria, Louisiana, to New Orleans. He had left Alexandria at 9:10 P. M. and was proceeding along U. S. Highway 71, traveling in a southerly direction, and at the time in question, had arrived at a point approximately one and one-half miles south of LaPlace. There were 22 passengers on the bus at the time. He was traveling on the right hand side of the road and at a rate of speed of approximately 40 miles per hour. The shoulder on the right hand side of the road was under construction and in such condition that it could not be trav-

eled. The appellant observed the lights of a car approaching from the opposite direction and coming toward him from New Orleans. When this car reached a point about 250 feet from him, the driver of the car pulled into the appellant's lane of travel. The car continued to approach in the same lane. The appellant applied his brakes, reduced his speed, sounded his horn and blinked his lights as a warning but the approaching car continued in the same lane. The appellant stayed on his right hand side of the road until the approaching car was 50 or 60 feet from him. He said that he saw then that the driver of this car was going to "stay there" and that his only alternative in avoiding a head-on collision which would probably cause his own injury or death as well as injury or death of his passengers was to turn into the left lane. This he did, and the approaching car scraped the right hand side of his bus for about 18 inches and continued on its way without stopping. No other damage was done to the bus and neither the appellant nor any of his passengers were injured. Before turning into the left lane, the appellant looked in both directions and saw that there were no cars approaching from either direction in that lane. He could not turn to the right because of the condition of the shoulder and if he had not turned to the left, a head-on collision would have been inevitable, resulting in possible injury or death to himself and some or all of his passengers, as well as serious damage to the bus. When the approaching car had passed, the appellant pulled back into his right side of the highway and stopped and requested the first car that was coming from New Orleans to stop at LaPlace at the State Trooper Weighing Scales and report the accident. He waited about forty minutes for the state police and when none came, he had courtesy cards filled in and signed by all of the passengers to be turned in in completing the accident report. In going into New Orleans, he stopped at the police headquarters and reported the occurrence there. He then

proceeded to the bus station and called Mr. Cecil Prothro, the regional manager, in accordance with company instructions and notified him of the accident. Mr. Prothro asked him in detail what had happened and he told him what had happened, and Mr. Prothro commented that he, the appellant, had done the right thing. Mr. Prothro then directed him to call Eddie Fry, the station manager in New Orleans, and he did so, and Mr. Fry came to the station and in company with the appellant, went back to the scene of the accident to investigate it. Several pieces of chromium that had been knocked off the automobile were found at the scene of the accident and were brought back to the station and turned over to Mr. Prothro, together with the courtesy cards that had been taken from the passengers. The appellant and Mr. Fry then made out an accident report, after which, the appellant went home and went to bed.

The appellant started back to Alexandria around 2 o'clock P. M., arriving in Alexandria at 7:45 P. M. on September 28. He called at Mr. Prothro's office, at which time, according to the statement of the appellant, Mr. Prothro's attitude with reference to the course taken by the appellant had entirely changed. Mr. Prothro inquired of the appellant if he had not gone to Jackson two days previous to the day of the accident and upon receiving an affirmative reply, told the appellant that "that was what was the matter with you, you had that on your mind, that is the reason you had the accident." Mr. Prothro also told the appellant on this occasion that he went to Jackson and sold all of the employees of the company down the river and that he was going to pull appellant out of the service and that he would have time to go back to Jackson and undo what he had done in Jackson. On October 8, the appellant received the written notice of his discharge. After the receipt of this notice, he appealed to Mr. Walker, the President of the Continental Southern Lines, and was told by Mr. Walker that as long

as he, Walker, had anything to do with the company, he, the appellant, would never drive another bus again for the company. The appellant also testified as to the wages he was being paid by the appellee and as to the damages which he was claiming.

It is the contention of the appellant that his contract of employment with the appellee was subject to the provisions of the agreement entered into between the appellee and Southern Association for Transportation Employees, of which he was a member, and that under the terms of that agreement which was in effect for 32 months from February 1, 1950, he was employed for a fixed time and could not sooner be discharged without sufficient cause. We agree with this contention of the appellant. In the cases of McGlohn v. Gulf & S. I. R. R., 179 Miss. 396, 174 So. 250, and Moore v. Illinois Central Railroad Company, 180 Miss. 276, 176 So. 593, this Court has held that a contract by a labor union with an employer similar to the one here was (1) valid; (2) that a member of the labor union which made the contract could sue thereon although he had not himself agreed to work for the employer for any definite time; and (3) that he could not be discharged by the employer at will.

It is further contended by the appellant that he was discharged without sufficient cause in violation of the aforesaid collective bargaining agreement, and that the trial court was, therefore, in error in sustaining the motion to exclude the testimony and in directing a verdict for the appellee. In making this contention, the appellant admits the technical violation of the rule providing that he should not pull to the left to avoid a head-on collision. But appellant, while admitting the reasonableness of the rule under normal conditions, says that the application of the rule to him under the circumstances confronting him at the time of the accident would render the rule under such circumstances unreasonable.

 It is generally held that rules promulgated by employers must be reasonable. In 35 Am. Jur., under the title "Master and Servant," Sec. 45, it is said: "Rules, instructions or commands in order to be the ground for discharge on the score of disobedience must be reasonable and lawful, must be known to the employee, and must pertain to the duties which the employee has engaged to discharge. Where an order or rule is not reasonable in view of the terms of the contract of employment and the general rights of the parties, a refusal to obey does not justify the employee's discharge. . . . The question whether in any given instance the work is of this description is one of fact."

The clear implication to be drawn from the decision of this Court in the case of Corley v. Rivers, 107 Miss. 67, 64 So. 964, is that rules and regulations adopted by an employer for the government of his employees must be reasonable. In that case the Court said: "Appellant, as owner, certainly had the right to adopt reasonable rules and regulations for the government of his plantation affairs. The rules shown in this case are reasonable." We think that the appellant's contention that the application of the rule to him under the circumstances confronting him at the time of the accident would render the rule unreasonable. There is no dispute in the evidence, and on the motion to exclude, the evidence must be taken as true. According to this evidence, the appellant was proceeding on his right hand side of the highway at a lawful rate of speed. He was being approached from the opposite direction by a driver of an automobile traveling in the appellant's lane of travel. The appellant first saw him enter such lane when he was approximately 250 feet from him. The car continued to approach in the same lane. The appellant applied his brakes, reduced his speed, sounded his horn, and blinked his lights as a warning, but the approaching car continued in the wrong lane until it reached a point from 50 to 60 feet from

appellant's bus. The appellant could not turn to the right because of the condition of the shoulder which was under construction. His only escape was to turn to the left. He looked and saw nothing approaching from either direction in the left lane. By turning to the left, he avoided a head-on collision and avoided possible if not certain injury or death to himself as well as to the passengers on the bus. In the light of common sense and reason, there was no other course for him to take in the interest of his own safety as well as the safety of his passengers. It is unthinkable that an employee should be arbitrarily required under penalty of discharge to observe a rule of his employer even though such observance under the circumstances might result in possible or certain bodily injury or death to himself and others entrusted to his care. We think that the application of the rule in such circumstances would render the rule wholly unreasonable.

The accident in question occurred in Louisiana. Under the statutes of Louisiana, which have been set up by the appellee in its answer as an affirmative defense to this action, the driver of a vehicle is required to drive upon the right half of the highway and as closely as possible to the right hand edge or curb unless it is impracticable to travel on such side of the highway and except when overtaking and passing another vehicle. The Louisiana Court, in the cases of Lacey v. Luckey, 19 La. App. 743, 140 So. 857, and Willis v. Standard Oil Company of Louisiana, 17 La. App. 217, 135 So. 777, and numbers of other decisions, has held in construing these statutes that it is well settled in the jurisprudence of Louisiana that "a driver of an automobile upon the right side of a highway, in order to avoid a head-on collision with an approaching car which is traveling upon the wrong side, may cut his car to the left in an attempt to avoid an accident, and in so doing, under such circumstances, will not be held to be negligent." While the case at bar is not one in-

volving the question of liability for negligence, it does involve a claim of wrongdoing and these cases are persuasive on the question now before the Court in that they recognize the reasonableness of a driver's conduct who is proceeding on his right side of the road in turning into the left lane to avoid an accident where no other means of avoidance is present.

It is argued by the appellee, however, that it had the right to discharge the appellant for the violation of the rule irrespective of circumstances confronting him at the time of the accident. We do not think so. As we have heretofore pointed out, to require the appellant to comply with the rule under the circumstances which confronted him, even though so to do would in all probability have resulted in injury or death to him and some or all of his passengers, is to render the rule under such circumstances unreasonable.

It is further argued by the appellee that even if it be conceded that the discharge of the appellant for the violation of the rule was not justified, the appellant is precluded from recovery because he did not exhaust all of the administrative remedies provided in Section 3 of Article X of the aforesaid collective bargaining agreement. This section provides a procedure by which a discharged employee may obtain an investigation as to the justification of his discharge and for demanding in writing within fifteen days from the date of notification of his discharge a hearing, and for appeals, and providing that the failure of the appellant to comply with this provision of the agreement constitutes a waiver and forfeiture of any claim. It is said by the appellee that this provision of the agreement was not complied with and that, therefore, the appellant is precluded from recourse to the courts by suit to recover damages for his wrongful discharge. This is not a proceeding by the appellant seeking restoration to his employment. It is a suit for damages occasioned by his alleged wrongful discharge,

and one in which his personal rights and property rights are involved. The contention of the appellee that the appellant is precluded by his failure to first exhaust administrative remedies provided in the collective bargaining agreement has been expressly decided by this Court adversely to such contention in the case of Tri-State Transit Company of Louisiana v. Rawls, 191 Miss. 573, 1 So. 2d 497, wherein the Court held that "the plaintiff is not required to exhaust these administrative remedies as a prerequisite to recourse to the courts by suit to recover damages for an unjustified discharge," citing the case of Moore v. Illinois Central Railroad Co., 180 Miss. 276, 176 So. 593.

For the reasons hereinbefore expressed and in view of the evidence, we are of the opinion that the learned trial judge was in error in sustaining the appellee's motion to exclude and in directing a verdict for the appellee. Under the rule as announced in Partee v. Pepple, et al., 197 Miss. 486, 20 So. 2d 73, and other decisions of this Court, where such a motion is erroneously sustained and the plaintiff appeals, this Court will not render final judgment here on the theory that under the proof made by the plaintiff, he was entitled to recover, but will reverse the case for a new trial. Accordingly, the judgment of the court below is reversed and the cause remanded for a new trial.

Reversed and remanded.

*Roberds, P. J.,* and *Hall, Lee* and *Kyle, JJ.,* concur.