JENKINS *v.* WM. SCHLUDERBERG-T. J. KURDLE CO.

[No. 293, September Term, 1957.]

*Decided July 23, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*I. Duke Avnet,* with whom were *Avnet & Avnet* on the brief, for the appellant.

*Earle K. Shawe* and *William J. Rosenthal,* with whom was *Sidney J. Barban* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal by Josephine Jenkins, a former employee of Wm. Schluderberg-T. J. Kurdle Co., appellee, from an order and judgment of the Superior Court of Baltimore City, sustaining without leave to amend, appellee's demurrer to her declaration. Her suit is for damages for her allegedly wrongful discharge from employment by the appellee in violation of a collective bargaining agreement between the union of which she was a member, the Amalgamated Meat Cutters and Butcher Workmen of North America, Local No. 149, A.F.L.-C.I.O. (the "Union"), and the appellee (sometimes referred to below as the "Employer"). Her declaration states that she had been an able and satisfactory employee of the appellee for fourteen years prior to her discharge; that the Union failed and refused to arbitrate her grievance although she requested it to do so; that the Union acted in a "discriminatory, wilful, and arbitrary manner toward the plaintiff, which accounted for its failure and refusal to arbitrate plaintiff's discharge"; and that the Employer refused to comply with her request for reinstatement and back pay.

The appellee's demurrer was based chiefly on two theories: (1) that the collective bargaining agreement barred the plaintiff from maintaining this suit for wrongful discharge (though this was not explicitly stated as a ground of demurrer); and (2) that state courts are precluded by the National Labor Relations Act from asserting jurisdiction in such an action. At the hearing on the demurrer, the appellee did not urge the second point, and on appeal it has not relied on this point, which we assume has been abandoned.[1] The trial court sustained the appellee's demurrer on the first theory, and we shall consider solely the correctness of this ruling.

The collective bargaining agreement between the Union and Employer is an elaborate document covering all the usual

---

1. See *International Association of Machinists v. Gonzales,* 356 U. S. 617 (1958) and *International Union v. Russell,* 356 U. S. 634 (1958) where it was held that federal labor legislation, does not, by preemption, exclude the jurisdiction of state courts to award an employee damages against a union.

aspects of labor-management relations. Section 1(B) of the agreement provides that "No employee shall be unjustly discharged or laid off." The appellant claims that she was unjustly discharged and that the employer has committed a breach of the agreement.

There no longer seems to be any doubt that in certain situations an individual employee may sue his employer for the breach of a collective bargaining agreement. Several theories have been advanced to explain this result.[2] One view is that although the agreement gives no rights to individual workers, whenever a man goes to work, his individual contract incorporates the union agreement as a local custom or usage so that every breach of the collective agreement is also a breach of the individual contract of employment. A second theory holds that a collective bargaining agreement is a contract with the employer as promisor, the union as promisee, and the employees as third party beneficiaries. A third view is that the collective bargaining agreement is like a trust, with the union holding the employer's promises in trust for the benefit of the individuals. Under any of these theories, the individual may sue the employer for infringement of his individual rights.

What are these "individual rights" for which he can sue? Certainly, promises relating to such things as union security, recognition, deduction of dues, the use of bulletin boards, and access to the plant run to the union and are not individual rights. On the other hand, it is felt that claims regarding wages, seniority, and wrongful discharge peculiarly affect the individual and for them he should be able (at least in the absence of some bar under the agreement) to bring an individual action. With a discharge, for example, it is *his* job that is at stake and *his* income. Writing specifically with re-

---

2. See Cox, "Rights under a Labor Agreement", 69 Harv. L. Rev. 601 (1956); Gregory, "The Collective Bargaining Agreement", 1949 Wash. U. L. Q. 3; Warns, "The Nature of the Collective Bargaining Agreement", 3 Miami L. Q. 235 (1949); Lenhoff, "The Present Status of Collective Contracts in the American Legal System", 39 Mich. L. Rev. 1109 (1941); Witmer, "Collective Labor Agreements in the Courts", 48 Yale L. J. 195 (1938).

gard to discharge cases, Professor Cox has stated, "The great weight of authority sustains the individual's right of action." "Rights under a Labor Agreement", 69 Harv. L. Rev. 601, 647 (1956). And see cases cited in Annot., 18 A. L. R. 2d 352, 367 (1951). See also *Ass'n of Westinghouse Salaried Employees v. Westinghouse Elec. Corp.,* 348 U. S. 437 (1955).

Naturally, the employer does not wish to be harassed with a lawsuit each time an employee has a grievance regarding wages, seniority, or wrongful discharge. Nor does he want to incur the risk of a strike because the union may sympathize with a disgruntled employee. Hence the collective bargaining agreement usually provides for a detailed procedure through which all grievances are channeled. In the instant case, the grievance procedure, we understand, is of a rather usual type. It is as follows:

> "Should any difference arise between the Union or employee members, and the Company, as to the application and interpretation of this Agreement, there shall be no strike, stoppage or suspension of the work on the part of the Union or its members, or lockout on the part of the Company on account of such conditions. The following procedure shall be followed in settling such difference:
>
> (A) Complaints or Grievances presented by the Union and/or employees:
>
> (1) Employee or Shop Steward or both shall take up question with the foreman.
>
> (2) In the event a satisfactory conclusion is not reached, question may be taken up with the Sectional Superintendent.
>
> (3) In the event a satisfactory conclusion is not reached, question may be taken up with Plant Superintendent.
>
> (4) If the Complaint or Grievance is not satisfactorily determined by steps 1, 2, and 3 above, representatives of the Company Management shall meet with a Grievance Committee, consisting of

not more than six (6) employees selected by the Union and/or its Business Representative, at the Union's option, to discuss such complaint or grievance in an attempt to resolve the same.

(5) Any such complaint or grievance not satisfactorily settled by step 4 above, shall upon the application of either the Company or the Union, be referred to an Impartial Arbitrator to be selected by the mutual agreement of both parties. If the parties shall fail, within 10 days after notice for arbitration, to agree upon an Impartial Arbitrator, such arbitrator shall be appointed by the then Chief Judge of the Supreme Bench of Baltimore City. The decision of the Impartial Arbitrator so selected or appointed shall be final and conclusive upon the Company, the Union and the employees."

The general rule is that before an individual employee can maintain a suit, he must show that he has exhausted his contractual remedies:

"This rule, which is analogous to the rule requiring the exhaustion of administrative remedies as a condition precedent to resorting to courts * * * is based on a practical approach to the myriad problems, complaints and grievances that arise under a collective bargaining agreement. It makes possible the settlement of such matters by a simple, expeditious and inexpensive procedure, and by persons who, generally, are intimately familiar therewith. * * * The use of these internal remedies for the adjustment of grievances is designed not only to promote settlement thereof but also to foster more harmonious employee-employer relations." *Cone v. Union Oil Co.*, 129 Cal. App. 2d 558, 564, 277 P. 2d 464, 468 (1954).

Thus, if the employee refuses to take even the initial step of requesting the processing of the grievance, he will not be

granted relief in the courts. The difficulty arises when he presents his grievance to the union and he is dissatisfied with the way in which the union handles his case. There are not many cases on this issue, but the trend seems to be that he cannot sue the employer if he does not like the result of the union efforts at negotiation. See Cox, "Individual Enforcement of Collective Bargaining Agreements", 8 Lab. L. J. 850 (1957).[3]

However, that is not the case which confronts us. For purposes of a ruling on demurrer, we must accept as true the facts in appellant's declaration. The Employer has not elected to press any challenge to the allegations of wrongful discharge on its part and of wilful, arbitrary and discriminatory conduct on the part of the Union is failing and refusing to carry the plaintiff's grievance to arbitration, on the ground that these allegations are not sufficient as statements of fact, but constitute mere conclusions of the pleader. Cf. *Conrad v. City of Takoma Park*, 208 Md. 363, 118 A. 2d 497 (1955); *Lord Calvert Theatre, Inc. v. City of Baltimore*, 208 Md. 606, 119 A. 2d 415 (1956); *Marranzano v. Riggs Nat. Bank* (C.A.D.C., (1950)), 184 F. 2d 349. It should also be noted that the plaintiff's declaration makes no allegations of compliance with steps 1, 2, 3 or 4 of the grievance procedure, but the defendant makes no point of that either. The case thus comes to us on the bald allegations of wrongful discharge by the employer, arbitrary, etc., refusal of the Union to take up the cudgels of arbitration on behalf of the discharged employee, and the terms of the collective bargaining agreement. The heart of the Employer's contention is that the discharged employee "is limited in contesting the validity of her discharge to the remedies specified in the contract," that "only

---

3. See also, Rose, *"The Nature of a Grievance in Labor Relations"*, 3 Lab. L. J. 599 (1952); Dunau, *"Employee Participation in the Grievance Aspect of Collective Bargaining"*, 50 Colum. L. Rev. 731 (1950); Sherman, *The Individual and His Grievance—Whose Grievance Is It?"*, 11 U. Pitt. 'L. Rev. 35 (1949); Hamilton, *"Individual Rights Arising from Collective Labor Contracts"*, 3 Mo. L. Rev. 252 (1938); *"Individual Grievances"*, 50 N. W. U. L. Rev. 143 (1955); Note, 3 Buffalo L. Rev. 270 (1954); Comment, 1949 Wis. L. Rev. 154.

the Union or the Company [Employer] can invoke arbitration and "where the Appellant's bargaining representative has refused to arbitrate her discharge, the Appellant is bound by that determination [and] has no right to * * * maintain an individual action at law against the [Employer]."

The collective bargaining agreement in the instant case does not contain any express, affirmative statement that the only remedies which employees covered by it may have against their employer for alleged breaches of the agreement shall be through the grievance procedures provided for by the agreement. We think, however, that such a limitation may be implied from the agreement as to such matters as those in which the Union may be the aggrieved party or in which the interests of different groups of employees may be involved, and also generally (but subject to an exception which we shall state later) as to matters which may be considered as primarily individual rights.

The late Dean Shulman, of the Yale Law School, in an article entitled, "Reason, Contract and Law in Labor Relations", 68 Harv. L. Rev. 999, at pp. 1006-1007, contrasted the different interests involved in labor agreements in matters of seniority and in matters of discipline. As to the latter, he pointed out the interest of the union to challenge the soundness of the exercise of the employer's discretionary power to discipline or discharge and the interest of the employer to reduce this vulnerability of the disciplinary action taken by the employer, and then stated: "So most collective bargaining agreements do not go much beyond recognizing the employer's power to discipline or discharge and providing that the action shall be for cause, or good cause, and shall be subject to challenge by the employee and the union, subject to a few limitations or exceptions." At the conclusion of this article (p. 1024), Dean Shulman stressed the importance of self-government and of arbitration as a part thereof in labor relations, saying: "The arbitration is an integral part of the system of self-government. And the system is designed to aid management in its quest for efficiency, to assist union leadership in its participation in the enterprise, and to secure justice for the employees. It is a means of making collective

bargaining work * * *. When it works fairly well, it does not need the sanction of the law of contracts or the law of arbitration. It is only when the system breaks down completely that the courts' aid in these respects is invoked. But the courts cannot, by occasional sporadic decision, restore the parties' continuing relationship; and their intervention in some cases may seriously affect the going systems of self-government."

We think that under the provisions of the agreement now before us the Employer is generally entitled to immunity from suits by individual employees, that the Union is to consider carefully and fairly the alleged grievances of its members, that it is likewise to exercise its judgment and discretion fairly on behalf of its individual members in determining upon what terms it believes any grievances of theirs should be adjusted and whether such grievances should be carried to arbitration, if negotiations for settlement or adjustment fail. It is conceded in the present case that, but for the prohibition against unjust discharge contained in the collective bargaining agreement, the plaintiff would have no claim at all against the Employer. We think that she must take the bitter with the sweet and cannot select and rely upon one provision of the agreement which is to her advantage and at the same time reject or ignore another provision which limits or is a condition to the exercise of the provision which she invokes.

But, accepting that promise, the question is whether or not she is barred from redress through litigation for allegedly wrongful discharge by the Union's refusal to carry her claim to arbitration, notwithstanding that the Union's refusal is due to conduct which, on the pleadings before us, must be taken as wilful, arbitrary and discriminatory.

In discussing such a problem in his article on "Rights under a Labor Agreement", 69 Harv. L. Rev. 601, Professor Cox says in part (at p. 652): "While the rule which bars an individual employee from bringing an action on the contract when the union is unwilling to take the case to arbitration is sound if the union has made an adjustment or is satisfied that the grievance lacks merit, nevertheless it would work injustice in situations where the union is unwilling to

press the claim because of indifference or reluctance to suffer the expense. Both factors come into play under open-shop contracts when a grievance having no precedent value is filed by a non-member, whose failure to pay dues means that he contributes nothing to the cost of acting as his representative. One solution would be to open arbitration proceedings to individual grievants. Another alternative is to allow the employees to bring suit against the employer and union as co-defendants upon analogy to the bill in equity which the beneficiary of a trust may maintain against the trustee who fails to press a claim against a third person. The suit would fail on the merits if it appeared that the collective bargaining representative had dropped the grievance for lack of merit or had negotiated a reasonable adjustment." [4]

Professor Cox expresses much the same idea in his article entitled, "Individual Enforcement of Collective Bargaining Agreements", 8 Lab. L. J. 850 (1957) where, at p. 858, he states: "In my opinion the presumption should be against individual enforcement of a collective bargaining agreement *unless the union has unfairly refused* to act * * *. The bargaining representative would be guilty of a breach of duty if it refused to press a justifiable grievance either because of laziness, prejudice or unwillingness to expend money on behalf of employees who were not members of the union. Individual enforcement would then become appropriate. The proper remedy would be an action against the union and employer analogous to the action maintained by the beneficiary against the debtor of a trust when the trustee refuses to bring the action. It would be a defense to show that the union and employer had made a settlement or that the union's decision not to press the claim was honest and reasonable." (Emphasis added.)

Although we have not been referred to, nor have we found, any case exactly on all fours with the instant case, an analysis of related cases will, we think, demonstrate the soundness of this approach.

---

4. See 3 *Scott, Trusts,* Sec. 282.1 (1956).

A number of these cases deal with failure of the employee to exhaust contractual procedure.

In *Pattenge v. Wagner Iron Works,* 275 Wis. 495, 82 N. W. 2d 172 (1957), discharged employees brought an action against the employer for vacation pay allegedly due under the collective bargaining agreement. The contract even provided that the grievance procedure "shall be the sole means of disposing of grievances." However, it was held that these employees, who had been discharged for supporting a rival union, were not required to use the grievance procedure before bringing suit against the employer since it was "reasonably apparent that the [incumbent] union is hostile to him and will not give him adequate representation." The court felt that to require exhaustion of the contractual remedy "would place the employee's accrued rights against his employer more or less at the mercy of an unfriendly union." The court also emphasized the fact that the individual could not demand arbitration as a matter of right.

In *United Protective Workers v. Ford Motor Co.,* 223 F. 2d 49 (7th Cir. 1955), a suit for reinstatement and back pay by an employee against his employer was upheld despite the employee's failure first to follow the grievance procedure of the collective bargaining agreement. This did not bar his recovery in court, "because the Company's attitude * * * made it obvious that pursuit of the grievance procedure would have availed [him] nothing." On a previous appeal, *United Protective Workers v. Ford Motor Co.,* 194 F. 2d 997 (7th Cir. 1952), the court had similarly found that although the collective bargaining agreement established a grievance procedure, if the employer refused to participate in this procedure in a wrongful discharge case, the employee need not exhaust the contractual remedies.

In *Nichols v. National Tube Co.,* 122 F. Supp. 726 (N. D. Ohio 1954), an individual employee recovered damages for a discharge resulting from his employer's violating the collective agreement by compelling him to retire, even though the union had waived all claims for past violations in negotiating a retirement policy. The court said: "[I]t would seem * * * completely futile to have instituted grievance proceed-

ings in such circumstances. The retired employee had not the slightest chance of remedial consideration; there was no basis for relief. According to the defendant, the policy of retirement was inflexible and no one in the Company had the right to make exceptions; it was not an arbitral grievance; consequently, it would not be expected that the plaintiff should be required to do a vain thing as a prerequisite to a suit." (p. 728)

In *Youmans v. Charleston & W. C. Ry.,* 175 S. C. 99, 178 S. E. 671 (1935), where the employer refused to grant a hearing and made it impossible for the employee to pursue the course prescribed under the collective agreement, the employee's failure to exhaust his contractual remedy was no defense to his suit.

In many cases where it has been held that an employer cannot be sued until the contractual remedies have been exhausted, the facts show that the employee had initiated the grievance procedure but the union rejected the claim *on its merits* as unworthy, and these cases are the converse of the exception suggested by Professor Cox, which we have quoted.

Thus, in *DiSanti v. United Glass and Ceramic Workers,* 33 CCH Lab. Cas. 94, 785 (Pa. C. P. 1957), the plaintiff claimed seniority over another worker who was taken off the job. The other worker initiated a grievance claim under the contract machinery and eventually the plaintiff was removed from his job. Plaintiff then sued the employer for wrongful removal. The union and the other worker were joined as parties defendant. Against plaintiff's contention that it would have been futile to exhaust his remedy under the contract, because of the prior adjudication, the court held that plaintiff was bound by the union's actions in settling the dispute when the other worker had brought his grievance. The Court distinguished the situation there found to exist from such a situation as is alleged in the present case and said (p. 94, 789) : "In stating that plaintiff is bound by decisions arrived at according to the provisions of the contract, the Court does not mean to imply that a member of a collective bargaining agency can never seek the protection of the courts for wrongs done him. Certainly where it is made clear that

the decision was *arbitrary* or *capricious* or where fraud is sufficiently set forth, the courts are open to redress such wrong. However, such is not the case here * * *." (Emphasis added.)

*Chacko v. Pittsburgh Steel Co.*, 32 CCH Lab. Cas. 94, 452, 105 Pitt. L. J. 429 (Pa. C. P. 1957) was a suit to enjoin an employer from depriving the plaintiff of proper seniority rights. The grievance machinery was similar to the procedure in the agreement in the present case. The court there found that the union refused to process either grievance any further because it felt that they had no merit, and went on to say: "Under the collective bargaining agreement, the Union alone has authority to demand arbitration and is entitled to exercise its honest discretion in deciding whether or not an employee has a grievance which justifies appeal to arbitration. * * * At best, plaintiff's own case indicates that his Union used sound judgment in refusing to take his grievance to arbitration." (p. 94, 455)

In *Garner v. KMTR Radio Corp.*, 146 Cal. App. 2d 441, 303 P. 2d 825 (1956), a local union of electrical workers was the exclusive bargaining agent of radio technicians employed by the defendant. The plaintiff, a technician, was discharged by the defendant because he failed to report for duty, whereupon the union, which alone had authority to demand arbitration on the plaintiff's behalf, ascertained through investigation that the plaintiff was then in jail and would be there for some time, and determined that the discharge was justified and not wrongful. It was held that plaintiff could not thereafter sue the defendant-employer. Plaintiff did not deny that the grievance procedure was exclusive, and he did not suggest "that the union did not make a complete and fair investigation or that its decision was unjust in any respect."

In *Terrell v. Local Lodge 758*, 141 Cal. App. 2d 17, 296 P. 2d 100 (1956), a suit against an employer for wrongful discharge where plaintiff initiated the grievance procedure but the union decided not to go to arbitration, the court said: "The union * * * as the representative of appellant, exercised its discretion in this case and elected not to proceed to arbitration under the step four procedure. It therefore failed

to exhaust the grievance procedure which is, by the contract, the exclusive method for adjusting claims or disputes of an employee against the company." (p. 103) See also *Terrell v. Local Lodge 758,* 150 Cal. App. 2d 24, 309 P. 2d 130 (1957), where the employee's action against the union for failure to appeal the plaintiff's grievance to arbitration was dismissed.

A case often cited is *Cone v. Union Oil Co., supra,* 129 Cal. App. 2d 558, 277 P. 2d 464 (1954). There an employee sued his employer for loss of wages and seniority rights. The plaintiff's bill did not allege that she ever made any demand on the union to pursue her grievance under the collective agreement. The employer-defendant filed a motion for summary judgment with accompanying affidavits setting up the existence of the grievance procedure and the plaintiff's failure to ask the union to press her grievance. The motion for summary judgment was granted.

*Cortez v. Ford Motor Co.,* 349 Mich. 108, 84 N. W. 2d 523 (1957) involved a dispute in which 108 women claimed that they were laid off from work in violation of their seniority rights. The employees filed grievances with the union. The claims of the employees were rejected, and they sued the employer and the union. Although the plaintiffs claimed that the union "refused" to file and process their grievance, their pleadings and exhibits clearly showed that the union and its representatives received and considered plaintiffs' grievance at great length and that the general problem with which the grievance was concerned was the subject of extensive negotiation between the union and the company. The court said: "The essence of plaintiffs' complaint is really that the union failed to accept plaintiffs' position upon this grievance * * *. * * * [T]he contract makes amply clear that union representatives have discretion to receive, pass upon and withdraw grievances presented by individual employees.

Our Court has repeatedly held that proper exercise of such discretion over grievances and interpretation of contract terms in the interest of all its members is vested in authorized representatives of the union, subject to challenge after

exhaustion of the grievance procedure only on grounds of bad faith, arbitrary action or fraud." (p. 529)

See also *Zdero v. Briggs Mfg. Co.*, 338 Mich. 549, 61 N. W. 2d 615 (1953) where a suit for reinstatement was denied. There was no "failure on the part of the respective local unions to do all in their power to aid and assist Zdero in securing reinstatement. There is a complete absence of any testimony indicating that the defendants, Local Unions Nos. 212 and 272, acted in bad faith or in an arbitrary or negligent manner."

A case most heavily relied upon by appellee is *Taschenberger v. Celanese Corp.*, 26 CCH Lab. Cas. 86, 944 (1954), decided by the Circuit Court for Allegany County, Maryland. There, the discharged plaintiff presented his grievance to the union. A hearing was held, after which the union filed with the employer notice of its intention to arbitrate plaintiff's case. Subsequent investigation by the union, however, disclosed that there was not sufficient evidence to warrant arbitration. Plaintiff decided not to appeal this refusal to arbitrate to the executive board of the union, but instead sued the employer. His declaration did not, so far as appears from the report of the case, allege that the union had acted arbitrarily with respect to his grievance. The employer's motion for summary judgment which showed the facts above stated was granted.

In *Jorgensen v. Pennsylvania R. R. Co.*, 25 N. J. 541, 138 A. 2d 24 (1958), a discharged dining car steward of a railroad brought an action against the railroad for wrongful discharge. He had initiated the grievance procedure under the bargaining agreement, the union had rejected his claim, and he decided not to appeal via the contract route but to go directly to court. It was held that he had failed to exhaust his contractual remedies. The court said (p. 36): "We think that where an employee has been dismissed after charges have been preferred against him and *a hearing granted on those charges,* pursuant to the terms of a collective bargaining agreement, his rights and remedies are limited to those afforded under the union contract * * *. The correlative rights and duties of the parties are governed by the contract

which embodies the grievance procedures. The employer can dismiss an employee only in accordance with the provisions of the contract and is bound to extend to an aggrieved employee the right to resort to the applicable grievance procedure. An employee who seeks to enforce his rights under the contract must also accept its obligations. * * * If the employee is not so limited, any employer who seeks to discipline an employee would do so at· the peril of being subjected to a suit for damages despite the fact that the employer complied with all the procedures contained in the agreement and without any showing by the employee that it would have been futile to pursue his contractual rights. We are confident that such a result was not within the contemplation of the parties to the agreement." (Emphasis added.)

In *Mello v. Local 4408*, 82 R. I. 60, 105 A. 2d 806 (1954), a discharged employee was not permitted to maintain an action against his employer and union where the union officers had considered his grievance and decided not to take it to arbitration. There were no allegations that the union's actions were *arbitrary*.

In *Transcontinental & Western Air, Inc. v. Koppal*, 345 U. S. 653 (1953) (7-1 decision), an action for wrongful discharge by an employee against his employer brought in a federal court, the chief issue was whether the Railway Labor Act precluded resort to a state-created right of action. Mr. Justice Burton held that the Act did not deprive an employee of his state-created right to sue for damages for unlawful discharge. The Court reversed an award of damages, however, on the ground that the plaintiff had failed to exhaust the remedies provided in the collective bargaining agreement. A hearing had been held on the cause for his discharge but the employee did not appeal from the decision of the hearing officer, and he did not allege any arbitrary action by the hearing officer.

The strongest case for the appellee, we think, is *Guszkowski v. U. S. Trucking Corp.*, 162 F. Supp. 847, 34 CCH Lab. Cas. 96, 826 (D. N. J. 1958). This was a suit for wrongful discharge in which plaintiff claimed that his efforts to secure reinstatement were frustrated by the conspiratorial actions of

the defendant-employer and the Union; that the Union refused to take any steps in his behalf; and that complaint against the Union would be "vain, illusory and impracticable" because the Union appeals could not be completed until 1962. The court held that the plaintiff had not exhausted his remedies, and said: "Nowhere does he charge that the defendant [employer] refused to negotiate with regard to the remedies provided in the collective bargaining agreement on which the rights of the plaintiff to a 'claim' must be based. In the final analysis his complaint, in so far as remedial procedures for his dismissal are involved, would seem to be against the Union which, if his story be true, failed to initiate steps to establish the fairness *vel non* of his dismissal. The Union is not a party to this action and it is not incumbent on the defendant to institute proceedings under the Union contract. It is toward the Union that his allegations that any attempt to redress stated wrongs would be vain, illusory and impracticable would seem to be addressed." (p. 96, 289)

Additional cases which deny the employee a judicial remedy where his claim has already been considered on the merits include: *Peoples v. Southern Pacific Co.,* 139 F. Supp. 783 (D. Ore. 1955), *aff'd,* 232 F. 2d 707 (1956) (wrongful discharge; apparently no allegation that union acted arbitrarily); *Ringle v. Transcontinental & Western Air, Inc.,* 113 F. Supp. 897 (W. D. Mo. 1953) (wrongful discharge; union had granted hearing on the discharge); *United States v. Voges,* 124 F. Supp. 543 (E. D. N. Y. 1954) (employee could not compel arbitration of his grievance where union had decided that there was no merit to it); *Mayfield v. Thompson,* 262 S. W. 2d 157 (Mo. App. 1953) (wrongful discharge hearing had been held); *Payne v. Pullman Co.,* 13 Ill. App. 2d 105, 141 N. E. 2d 83 (1957); *Harrison v. Pullman Co.,* 68 F. 2d 826 (8th Cir. 1934); *Barker v. Southern Pacific Co.,* 214 F. 2d 918 (9th Cir. 1954).

A slim minority of cases grants the employee relief even though the union has rejected his grievance on the merits.

*Alabama Power Co. v. Haygood,* 266 Ala. 194, 95 So. 2d 98 (1957) was an action by an employee against the em-

ployer and the union for a declaratory judgment of his rights under the collective agreement which he claimed were violated by his wrongful discharge. In his amended bill, plaintiff alleged that he followed the first step in the grievance machinery, but that the Union "failed or refused" to carry his grievances to the second step. A demurrer to the bill was overruled. The court held that "* * * when the Union failed or refused to act, in effect it cut off the appellee's [plaintiff's] right to settle the grievance under step two and exhausted the administrative remedies thereunder for the appellee. Since we reach the conclusion that the appellee has in effect complied with the administrative remedies in the contract, he is entitled to have his bill for a declaratory judgment submitted to the courts * * *." (p. 101) This case definitely represents the minority view since there was no allegation of arbitrary or fraudulent conduct by the union. The opinion did not cite any authorities from other jurisdictions.

In *Moore v. Illinois Central R. R.,* 180 Miss. 276, 176 So. 593 (1937), a suit by employee against his employer for wrongful discharge, the contract provided for the presentation of grievances to the superintendent and then to the officers of the employer. Plaintiff abandoned this grievance machinery in mid-stream. It was held that he could bring his action in the courts. There was no allegation of arbitrary action here. Mississippi has followed this case and today holds that the court remedy is concurrent with the contractual remedy. See *Dufour v. Continental Southern Lines,* 219 Miss. 296, 68 So. 2d 489 (1953).

One other case supporting the minority position is *In re Norwalk Tire & Rubber Co.,* 100 F. Supp. 706 (D. Conn. 1951). This was a suit by two employees for wrongful discharge against the trustee in reorganization proceedings of the employer. After the discharges, the plaintiffs requested an investigation through the grievance machinery of the collective bargaining agreement. After these meetings, the union committee settled the grievance in favor of the employer and refused to take the case to arbitration. The plaintiffs thereupon sued the employer. The defendant claimed

that the settlement under the grievance procedure was a bar to this suit. It was held that since the collective agreement did not expressly make the union's position binding upon the employee, the employee could reject this position and bring suit against the employer. The bargaining agreement provided that the results of arbitration should be binding on all parties but it did not make this provision with regard to the results of mere negotiation. Against the argument that it would have been academic to provide for a negotiation procedure in the handling of grievances if the results of the negotiation were not to be binding, the court felt that even if the negotiations broke down, they still had the salutary effect of preventing strikes. Finally, the court referred to the danger that an individual's rights could be traded off by a union in its handling of grievances and took the view that they therefore could be adequately protected only by the courts.

In the complex field of labor relations many factors and many interests are involved. Collective bargaining is now established as a matter of national policy under the Wagner Act and the Taft-Hartley Act, as well as under the Railway Labor Act. Arbitration of labor disputes and the finality of arbitration awards therein are provided for under Article 7 of the Maryland Code of 1957. Conflicts of interest may exist or develop in many instances in grievance matters as between individuals or groups of employees represented by the same bargaining agent. It seems desirable that the bargaining agent should have power to deal with such problems. It is possible that even the discharge of a single individual might have wide repercussions in employer-employee relations, though usually this would not seem probable.

Possibilities of indifference, favoritism, discrimination and of trading off the interests of one group or member for the benefit of another group or member, of course, exist. Yet, possibilities of abuse of trust and confidence exist, in many fields. Through the law of trusts and of fiduciary or confidential relations, protections against such possible abuses have been developed in many situations. The law does not in such matters strike down discretionary powers conferred upon trustees merely because such powers might be abused. Nor

in the corporate field does it prohibit a corporation from issuing bonds or other evidences of indebtedness or different classes of stocks merely because the interests of holders of such bonds or of different classes of stock may differ. Courts will redress misuse of power. In the case of trusts they may take over the direction and control of the administration of the trust in greater or lesser degree, but ordinarily they do not do so and leave the trustee free to exercise the discretionary powers which the trust instrument confers upon him. In corporate affairs, the courts do not undertake to take over the functions of the board of directors, though they may grant relief when the board abuses its powers, as by favoring the interests of one stockholder or group of stockholders at the expense of others.

Another analogy which suggests itself is that of court review of administrative action, notably in zoning cases. In such cases, many conflicting interests may have to be resolved by the duly constituted zoning authorities, and their action may be judicially reviewed. The rule is well established in such matters that a court may not substitute its judgment for that of a zoning board, and that it will not set aside the action of the board unless such action is unreasonable, arbitrary, capricious or illegal. Thus, a court will not reverse the board if the question decided by the board is fairly debatable, whether or not the court itself would have reached the same conclusion on the same evidence.

Analogies are a favorite basis for legal reasoning, but they are rarely perfect and they may bring about a collapse of reasoning, if stretched too far. Though we recognize this danger, we think that the above analogies are persuasive, and we are of the opinion that the rule suggested by Professor Cox, referred to above, is sound. This is that as a general rule grievance procedures provided by a collective bargaining agreement should be a bar to suits by individuals against the Employer based upon alleged violation of the agreement, but that such suits are not barred if the Union acted unfairly towards the employee in refusing to press the employee's claim through to, and including, arbitration under the collective bargaining agreement. We accordingly hold that under

the agreement here involved, the plaintiff is not barred from bringing this suit against her employer for allegedly wrongful discharge, where, on the facts alleged (and admitted by the demurrer) the Union acted arbitrarily and in a discriminatory manner in refusing to press the plaintiff's grievance to arbitration under the agreement. The order and judgment appealed from will therefore be reversed and the case remanded.

We think that on remand the Union would be a proper party to the suit. We are not prepared at this time to say that it is a necessary party. Neither are we now prepared to say that the suit should be in equity or that it should be transferred from law to equity. (See Professor Cox' suggestion in 69 Harv. L. Rev. at p. 645.) If any relief by way of injunction or *mandamus* against any party should be appropriate, it would seem to be available under Secs. 61-73 of Article 75 of the Code (1957).

> *Order and judgment reversed, the costs of this appeal to be paid by the appellee; and case remanded for further proceedings.*