JORGE LÓPEZ ET AL., Plaintiffs and Appellants, *v.* DESTILERÍA SERRALLÉS, INC., Defendant and Appellee.

No. R-63-40.     Decided April 10, 1964.

*Julio Alvarado Ginorio* for appellants. *Leopoldo Tormes García* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

Plaintiffs-appellants allege that the trial court erred in granting the summary judgment requested notwithstanding the fact that there existed a genuine issue based on a material fact. The genuine issue is based on the fact of whether or not the case at bar was submitted to arbitration. The labor organization—to which appellants belong—alleges that no one was authorized to submit to arbitration the claim arising from a conflict in the interpretation of a labor-contract clause. On the contrary, the defendant-appellee argues that said labor-contract clause was submitted to arbitration to the Grievance Committee, aided by a fifth member.

The labor-contract clause, the interpretation of which gave rise to this claim and to the arbitration award, reads thus: "The company agrees that whenever the laborers report for work in the morning or afternoon shifts, or if after the work is commenced it is discontinued, or if any of the workers should suffer a labor accident, they shall receive wages corresponding to four working hours, but they may be assigned to perform any other work to complete said four hours, unless the company should give notice in advance to the workers that their services are not required in order to prevent them from incurring unnecessary expenses."

The following issue was submitted to arbitration: "To determine whether laborers who have worked the morning shift and report to the afternoon shift are covered by the four-hour guaranty pursuant to the collective bargaining agreement." In accordance with the arbitration award rendered, defendant-appellee alleged "that the four-hour guaranty in the afternoon shift only covers employees who have not worked in the 8:00 A.M. to 12:00 M. shift; that is,

that the four-hour guaranty applies to employees who begin their shifts during a working day. The Company explains that employees who worked the morning shift are not covered by the four-hour guaranty in the afternoon shift, if the Company is forced to discontinue work before 5:00 P.M."
On the contrary, the Union alleged, on behalf of plaintiffs-appellants, "that pursuant to the clause in controversy if employees are notified at the end of the morning shift that they should report to the afternoon shift, any employee so notified is covered by the four-hour guaranty if the Company stops work before the afternoon work is over. The Union makes it clear that if at 12:00 noon when the employees return home for lunch the Company does not notify them that they will have no work for the full afternoon shift, the Company is bound to pay them the four-hour guaranty established in the agreement for the afternoon as well as for the morning shift."

Pursuant to the award rendered by Néstor Acevedo, the fifth member, the clause in question should be construed as follows: "Whenever work is discontinued after having commenced, or an employee suffers a labor accident, the latter shall receive a salary equivalent to four working hours. It is obvious that the clause in question offers no guaranty for an eight-hour working period. The guaranty is limited to one-half of said working day and not to the entire regular working day, as alleged by the Union. The four-hour guaranty applies to the afternoon shift when the employee in question did not work in the morning shift, but began to work in the afternoon shift, that is, at 1:00 P.M. We repeat, the four-hour guaranty applies to the regular working day. The regular working period is divided into two shifts of four hours as a policy of social justice, and the four-hour guaranty is intended to assure any worker who comes to work within the conditions fixed by the agreement, that his income shall not be less than those four hours. If he is able

to work four hours in the morning, he cannot expect to obtain payment for four additional hours if he has only worked one, two, or three hours during the afternoon. This is not stated in the agreement nor is such the practice in collective bargaining among similar industries. Consequently, there is no doubt that workers who, for instance, work six hours per day are entitled to receive payment only for the six hours actually worked, and not for the full eight hours, as alleged by the Union. Employees are entitled to receive payment for four working hours per day when they report to work, although they do not work during them, if the company has not given them notice in advance that there is no work for them that day. For the reasons stated above the undersigned arbitrator renders the following decision: 'Any worker who has worked the complete morning shift and who comes to work in the afternoon shift is not covered by the four-hour guaranty in the afternoon shift established by the agreement in force.' " This decision was rendered on October 14, 1960.

On January 5, 1961, plaintiffs-appellants filed a claim for certain wages owed by the defendant-appellee, alleging, "that during the periods involved in this complaint different collective agreements have been in force between the employer and employees, every one of which contains a clause similar to the one copied below which is comprised in Article XI, paragraph 3 of the Collective Agreement between defendant and plaintiffs, now in force:

"Art. XI. General Provisions

"3. The Company agrees that whenever the laborers report for work in the morning or afternoon shifts, or if after the work is commenced it is discontinued, or if any of the workers should suffer a labor accident, they shall receive wages corresponding to four

working hours, but they may be assigned to perform any other work to complete said four hours, unless the Company should give notice in advance to the workers that their services are not required in order to prevent them from incurring unnecessary expenses;

that during the years involved in this claim Jorge López and the employees above-mentioned reported to work in their respective jobs during the afternoon shift, after having worked four hours in the morning shift, without having been notified that their services were not necessary during the afternoon shift, in order to prevent them from incurring unnecessary expenses; that after those workers came to their respective work they were suspended during the said afternoon shift, some times before commencing their work, other times after their work had commenced, but without having worked the four hours of the afternoon shift, and without said workers being paid in either instance the four hours of the afternoon shift, to which they were entitled, pursuant to the different collective bargaining agreements."

On February 23, 1961, the answer to the complaint was filed and it is alleged therein that during all the time involved in the complaint, whenever their services were not required, because of the nature of the work performed by the different workers or any one of them for the defendant, the latter had given due notice in advance, so that they would not come to work. As a special defense it is also alleged: "A—That according to the provisions of the last collective bargaining agreement in force during the year 1960 between the Unión de Trabajadores de la Industria Licorera de Ponce, affiliated to the International Brotherhood of Longshoremen, District of Puerto Rico (AFL-CIO), to which, on information, laborers who work for this defendant in its plant for the manufacture of alcohol and bottling of rum, established in Sabanetas ward, Mercedita, Ponce, P.R., are affiliated, plaintiffs,

through said Union, submitted to the Grievance Committee created by said collective agreement to take cognizance of and settle disputes or controversies arising between the workers and said Union, and this defendant, as their employer; and the claim referred to in the complaint, so that said Committee might determine whether those workers who had worked during the morning shift and came to work in the afternoon shift, are entitled to the four-hour guaranty, according to said collective agreement. The members representing the Union and the representatives of the employer, to wit, the respondent, having reached no agreement, a *fifth member* was chosen from among the arbitrators of the Bureau of Arbitration Committee of the Department of Labor of Puerto Rico, Néstor Acevedo, an official of the latter, having been thus designated. Plaintiffs appeared before said arbitrator, represented by said Union, as well as the defendant through its representatives. They presented their allegations and submitted to arbitration, pursuant to law. The corresponding hearing was held, the parties submitted their respective evidence and testimonies and, after having considered the allegations and evidence introduced, said arbitrator entered his decision on October 14, 1960. It was determined therein that employees who have worked during the morning shifts and report to work in the afternoon shift, are not entitled in the afternoon shift to the four-hour guaranty referred to by appellees, and that inasmuch as the Union, on behalf of the plaintiffs, and even appellee itself, failed to take any legal action against said decision within the term established by law, the same became final and unappealable for all legal purposes; B—That inasmuch as the issue now raised in the complaint was decided and definitively adjudicated, plaintiffs are estopped from exercising this action and this Hon. Court lacks jurisdiction and venue to take cognizance of this matter which, pursuant to law, has the nature and effect of res judicata between the parties;

C—That the complaint filed herein does not state any allegations determining the right on the part of the plaintiffs or any of them to ask for any remedy against this defendant . . . ."

The issue being thus joined, on February 27, 1962 the defendant-appellee moved for summary judgment, attaching to the motion a copy of the collective agreement, a copy of the award issued and a sworn statement of Mr. Ezequiel Navas, timekeeper of Destilería Serrallés, Inc., stating that "plaintiffs were notified in advance whenever they did not have to come to work in the afternoon shift, so that they would not come to work." On March 16, 1962 plaintiffs-appellants filed a motion objecting to the motion for summary judgment, alleging: "That there are certain questions of fact in controversy, which have not been admitted by the defendant, for instance, the fact alleged under oath that the workers were not given notice in advance that their services were not necessary." A sworn statement of plaintiff Jorge López was attached to the opposition, stating, "that we, the laborers, were not given notice in advance not to go to work and yet we went to work and in countless occasions we had to return home without having worked. That we were not paid for said shift when we went to work without having been notified in advance that there was no work." Still on June 27, 1962 an additional motion in opposition to the motion for summary judgment was filed, alleging that the arbitration award entered on October 14, 1960, "is altogether null and void inasmuch as it is contrary to public policy, as stated by the plaintiffs before this Honorable Court (Superior Court of Puerto Rico, Ponce Part), and because the arbitrator lacked jurisdiction to decide the issue raised and because the submission by the parties was null as there was no legal submission by the Union representing the plaintiffs (and) even if the said award were valid, which is denied, it would be only applicable to the years or periods

covered by the contract or collective agreement construed, and not to other years covered by other collective agreements mentioned in the complaint and which were not presented to any arbitrator." Said additional motion was filed together with a sworn statement of Porfirio Díaz, Secretary of the Union, stating "that I have under my custody the books of the above-mentioned Union. That it does not appear from the Minute Book nor from any other book of the Union that any one has been authorized by the Board of Directors of this Union, nor by the General Assembly of the Union, to submit to arbitration the interpretation of the Clause of the collective agreement entered into on July 1, 1959, by the Union and the defendant, which was in force until June 30, 1961."

The order disposing of the motion for summary judgment and the judgment deciding the case were entered on January 23, 1963. After citing Arts. XI and VIII of the collective agreement, concerning the creation of the Grievance Committee, the following findings of fact and conclusions of law appear in the order of the trial court: "In compliance with these two articles of the agreement an arbitration hearing was held in Ponce on August 15, 1960, at which the Union, represented by Dimas García, Leonardo Rodríguez, Jorge Alvarez, and Jorge López, and the employer· represented by counsel Alfonso Pizarro Lago, appeared. It was agreed to have the fifth member act as arbitrator and the following issue was submitted to him: 'To determine whether any employee who has worked on the morning shift and comes to the afternoon shift is entitled to the four-hour guaranty pursuant to the collective agreement.' The fifth member acting as arbitrator was Néstor Acevedo, who on October 14, 1960, delivered a written opinion to the parties. Said opinion concludes: '. . . Any worker who has worked the full morning shift and comes to work to the afternoon shift is not entitled in the afternoon shift to the four-hour

guaranty established in the agreement in force.' No action was taken against this arbitration award and the court assumes that it was due to the fact that pursuant to the terms of paragraph A of Article VIII of the Collective Agreement, the decision of the grievance committee is final and binding on the parties. The eighth paragraph of the complaint states that all the plaintiffs worked four hours on the afternoon shift during the period referred to in said complaint, and were suspended without notice. The ninth paragraph states that they were not paid for the four afternoon hours, to which they are entitled according to the collective agreement. The only issue before this Court, which is raised in the motion for summary judgment, is the determination of the validity and effect of the arbitration award."

Applying the doctrine of the case of *Rivera v. Land Authority*, 83 P.R.R. 251, 256–57 (Rigau) (1961), the trial court granted the motion for summary judgment and entered judgment dismissing the complaint. It applied the following reasoning from the *Rivera* case: "To uphold the complainant's position would not only be incorrect but would practically bring about a chaos in the making of collective bargaining agreements. Although the rights claimed by the complainant are private rights, they are rights arising from a contract—the collective bargaining agreement—and in that contract there was stipulated, as we have seen, the manner for settling disputes arising during the life of the contract and in connection therewith. . . . The complainant can not pretend to avail himself of the benefits of some clauses of the contract and reject others; he can not negotiate collectively and individually at the same time."

On review before this Court, plaintiffs-appellants assign two errors: (1) The Honorable Superior Court of Puerto Rico, Ponce Part, erred in entering summary judgment notwithstanding the fact that there was a genuine

issue as to a material fact preventing a summary judgment, and (2) the Honorable Superior Court of Puerto Rico, Ponce Part, erred in entering summary judgment in connection with all the different working periods mentioned in the complaint.

1. An attempt is made to reason out the first error, in the following manner: "This is a wage claim by virtue of the interpretation of a clause in the collective agreements in force during a number of years specified in the complaint, which were entered into by the defendant and the labor organization, to which appellants belong. Said clause was adversely interpreted by the arbitrator, but appellants have challenged the validity of the arbitration award alleging there was no valid submission. By means of a sworn statement filed in the record of said case, the Secretary of the Union to which appellants belong, alleges that no one had been authorized to submit plaintiffs' claim to arbitration, that is, the submission to arbitration has been challenged. He alleges that it does not appear from the Minute Book that such submission had been authorized." According to plaintiffs the award could have been reviewed by the Superior Court of Puerto Rico, inasmuch as it was alleged, said allegation being supported by sworn statements of the President of the Union, Jorge López, to which plaintiffs belong, and of the Secretary of the Union, Porfirio Morales, that there had been no valid submission.

The articles of the collective agreement related to this error are the following:

"Article VII

"*Shop Representative*

"The parties agree that the Union shall designate four (4) delegates; one for the bottling plant, one for the rectifying plant, one for the distillery, and another for the solvent plant; who shall see to it that the provisions of this agreement shall

be complied with, and shall maintain labor discipline in the shop and the best relations between the Union and the Company. The delegates of the Union are hereby authorized to inquire into and settle, together with the Company's representative, any complaint, grievance or dispute, arising in the plant concerning the laborers or the employer on account of the *interpretation . or applicability* of this agreement. Should the Union's delegate and the Company's representative be unable to settle a case brought to their attention, they shall refer it to the Grievance Committee hereinafter created."

"Article VIII

*"Grievance Committee*

"A Grievance Committee is hereby created which shall be constituted by two (2) representatives of the Union and two (2) representatives of the Company. This committee shall have power to inquire into and settle all the questions and complaints brought either by the laborers or the employer to its attention, as well as any *disputes arising on account of the interpretation and applicability of this collective agreement.* Should the aforesaid committee be unable to reach an agreement, a fifth member shall be appointed by mutual consent, and the decision reached by said committee of five members shall be final and binding on the contracting parties." (Italics ours.)

■ Upon examining the two provisions of the collective agreement which might refer to submission, it is clear that the matter of submission is rather based on the delegation of authority in some delegates and representatives of the Union than on the direct intervention of the Union. Nor have we found anything to make binding a previous agreement of the Union to complete the authority given to the delegates or representatives by the agreement itself relative to the submission of questions or disputes, as well as any controversy that might arise on account of the interpretation and applicability of the collective agreement. Hence, the concurrence of the two regular representatives of the Union in the Grievance Committee is sufficient to consider that the

Union is acting through them and that the question is submitted by the Union. This is another way of raising once more the issue disposed of by this Court in the case of *Rivera* v. *Land Authority, supra,* and which was correctly applied by the trial court.

■ As already seen, it was first alleged herein as regards the procedural aspect, that there were questions of fact as, for instance, that the workers were not notified in advance that their services were not necessary, wherefore summary judgment could not be rendered. This allegation did not preclude this Court from holding that it would have to be disposed of, just as any other question of fact, by means of arbitration, and since it is so closely related to the four-hour guaranty, it would be useless to dispose of it if the interpretation proposed by plaintiffs and which was rejected by the arbitrator did not prevail as to the rest of Art. XI(3) of the collective agreement. Nevertheless, it was clearly decided in the *Rivera* case that when the parties sign a collective agreement "they substitute the arbitrator for the courts for the determination of all questions of fact and of substantial law, and they waive the right to litigate such questions before the courts. *Labor Relations Board* v. *N.Y. & P.R. S.S. Co.,* 69 P.R.R. 730, 746 (1949). In that case we stated at 753 that: 'We have refused to let the company blow hot and cold. Having voluntarily agreed to arbitrate, it may not relitigate before us the issues decided by the arbitrator. The same rule applies to the union.' It is well to add at this time that the same rule applies to members of the union; otherwise the justice which that rule purports to make would be illusory." The only exception we have found where the worker is permitted to resort directly to the courts seeking relief, is the case of a discharged worker against whom the Union has acted arbitrarily, refusing to press the employer, either directly or through arbitration, in order

that the laborer may obtain compensation: *Jenkins* v. *Wm. Schluderberg-T. J. Kurdle Co.*, 144 A.2d 88, 98–99 (Brune) (1958); *Textile Workers Union of America* v. *American Thread Company*, 291 F.2d 894, 901 (Boreman) (1961); see, also, 45 Cornell L. Q. 31 (1959) (17). We are excluding those cases where by statutory provision a worker is permitted to collect earned wages below the rate established in a collective agreement: *Food Fair Stores, Inc.* v. *Raynor*, 154 A.2d 814, 817 (Hammond) (1958).

2. The second issue has no merit at all. It is established right in plaintiffs' allegations that each and every one of the collective agreements contains a clause similar to Art. XI(3) of the collective agreement interpreted by the arbitrator.

For the reasons stated, the judgment rendered on January 23, 1963 by the Superior Court of Puerto Rico, Ponce Part, will be affirmed.