Simon J. Liebowitz, J.
Petitioner brings this article 78 proceeding against the Commissioner of the Department of Social Services, the Director of the Office of Labor Relations, and the City Civil Service Commission for an order vacating 'a determination “ which denied petitioner’s protest and grievance and *525 which affirmed respondent’s [sic] denial of petitioner’s grievance made March 12, 1970 which denied petitioner’s grievance against a punitive transfer, without charges, as required under the union contract and Civil Service Law, and which denied seniority to petitioner as claimed by him, ’ ’ and to direct the City Civil Service Commission to award petitioner’s seniority .and restore him to the title of resource consultant in the Department of Social Services. Since the petition does not purport to show any violation of a duty by the Civil Service Commission, or that it participated in the determination or took any action with respect thereto, it may be dismissed summarily .as to that respondent.
Petitioner alleges the following: He was appointed a caseworker in the competitive class on October 2, 1966. On February 23, 1970 he filed a “ first .step ” grievance as provided for by the Mayor’s executive order. As appears from that order, and a similar provision appears in the collective bargaining agreement between the city and the Social Service Employees Union, Local 371, step I provides for a filing of a grievance by the grievant with the supervisor of the division where the grievance is claimed to have occurred. On March 12, 1970, having received an adverse decision from the supervisor of the division, petitioner resorted to 11 step H ” of the grievance procedure set forth in the contract. This step consists of an appeal to the Commissioner of Social Services, or his designated representative, who is required to meet with the grievant or the union for review of the grievance and render a decision within 10 days. Petitioner’s appeal being unsuccessful, he resorted to step III set forth in the city’s contract with the union which permits an .appeal to the City Director of Labor Relations, who is required to review all appeals from step II decisions and determine .same within seven working days “ or within ten (10) days following such submission if a hearing is held.” (Emphasis supplied.)
The grievance procedures set forth in article XXI of the contract between the City of New York and the Social Service Employees Union, Local 371, which petitioner claims was violated, provide that steps II and III are appellate in nature, requiring the filing of separate appeals. Petitioner, in serving his “ grievance,” in the first instance stated that he was applying it to steps I, II and III. Respondents, by considering each step .separately on the merits, are deemed to have waived the procedural defects.
Petitioner, in two prongs of his attack on the determination, contends that the hearing before the hearing officer of the *526 Director of Labor Relations was conducted without a stenographic .record .and that he was denied the right to use a tape recorder; that the determination was void because it was not made within the 10 days provided for by the contract. The short answers to these contentions are that petitioner was not, as a matter of right, entitled to any hearing on oral testimony and that by section 4 of article XXI of the .agreement, where the city exceeds any time limit in rendering a decision on the appeal, the grievant is afforded the right to invoke the next step of the procedure.
The grievance set forth by petitioner was that on February 19, 1970 he was insulted, threatened and “spit” at by Mr. Rabinowitz, the .acting director, and subjected to “ vituperative vilification and hysterical screaming ’ ’; that certain other employees were guilty of misconduct detailed by him; that Rabinowitz at that time stated he would see to it that petitioner was transferred. While these claims by petitioner do not constitute “ grievances ” as defined in the contract with the union (art. XXI, § 1), it is undisputed that petitioner amended his “ grievance ” to allege that he was subsequently “ transferred ” from the Clinton Center to the Wyckoff Center on March 20, 1970, effective March 23, 1970, and “ demoted” from resource consultant to caseworker, with a loss of seniority.
Petitioner’s appeals on steps II and III were considered on his claim that the was wrongfully transferred from the Clinton Center as a resource consultant to the Wyckoff Center and designated a caseworker in violation of the terms of article XVI of the contract and section 80 of the Civil Service Law. The court concludes, as a matter of law, that there was no demotion within the meaning of section 80 of the Civil Service Law, as contended by petitioner. His classified title was that of caseworker, which has remained unimpaired, with no reduction in salary. There is no classified title of resource consultant.
A threshold question has been raised by respondents as to whether the determination attacked by petitioner may be reviewed in an article 78 proceeding since it is bottomed on an alleged breach of a contractual provision rather than the violation of a statutory duty and therefore does not fall within the ambit of CPLR 7803. The court is not constrained to arrive at any definitive conclusion as to this facet since it may, under the circumstances, consider the proceeding as an action for a declaratory judgment (CPLR 103; 3017, subd. [a]; Matter of Phalen v. Theatrical Protective Union, 22 N Y 2d 34). Accordingly, the court will dispose of the matter on the merits *527 on the basis of the papers before it and the evidence adduced at the hearing held by the court.
Respondents, as an affirmative defense, alleged that the processing and disposition of grievances “ are matters of contractual obligation and commitment, solely and exclusively, enforceable by the parties thereto, to wit, the union and the City ’ ’; that pursuant to section 2 of article XXI of the contract, step IV enables a grievant, including petitioner, to invoke arbitration from an unsatisfactory, decision of the Director of Labor Relations or his designee. It is alleged by respondents, and this is confirmed by section 7 of article XXI that the union alone is authorized to demand and act on behalf of petitioner and that, in the absence of allegations that the union refused to represent him, petitioner has no legal standing to institute the proceeding since he failed to exhaust his contractual remedies. Petitioner in his reply alleges he called upon the union to demand arbitration on his behalf but that his request was refused because he was not a member of the union.
The court upon examination of the papers concluded that testimony was required on two issues, viz.:
‘ ‘ 1. Whether the transfer of petitioner from the Resource Division of the Clinton Center to Caseworker in the Wyckoff Center was in violation of petitioner’s rights under Article XVT, .sections (d) 2 and 6 of the collective bargaining agreement and whether there had been compliance with Article XVI, section (e) 7.
‘ ‘ 2. Whether petitioner demanded of the union that his ‘ grievance ’ be- brought to arbitration as set forth in Article XXI, section 2, ‘ Step IV ’ and that the union wrongfully failed or refused to proceed to arbitration on his behalf.”
I. AS TO THE BREACH OF COHDECTIVE BARGAINING AGREEMENT:
As noted, petitioner’s original “grievance” of misconduct on the part of Rabinowitz and his coemployees was not a “ grievance ” within the definition of that term in section 1 of article XXI. However, his claim that he was improperly transferred to the Wyckoff Center may, if established, constitute a grievance since it is a “ claimed violation * * * of noncompliance with” the provisions of the city’s contract with the union. Contending that his transfer was punitive, petitioner cites section 3 of article XXII which provides that there may be no transfer ‘ ‘ without the presentation of charges in accordance with established disciplinary procedures.” However, this provision by its terms applies only to employees of the Housing and Development Administration. Transfers of *528 personnel in the Department of Social Services, where petitioner is employed, are governed by article XVI of the contract, which will be adverted to infra. By subdivision A-l a transfer is defined as follows: ‘ ‘ The term transfer shall mean the shifting of an employee from one bureau, division, social service center, or other premises used by the Department of Social Services to another, without any significant change in duties, responsibilities and remuneration ”. (Emphasis supplied.)
Subdivision B of article XVI of the contract provides:
“ DECISIONS TO TRANSFER
“ When the City decides it is necessary to transfer employees in any title into and or out of a particular work location or locations, such transfers shall be made in accordance with the provisions of this contract. Applications of this section shall be for legitimate and valid reasons, such as, but not limited to excess of staff, equalization of workloads, etc.”
This provision therefore precludes a transfer as a penalty but does not entitle petitioner to a formal hearing in accordance with “ established disciplinary procedures ” as set forth in article XVIII of the contract. The step II determination made by the Commissioner of Social Services, dated April 2, 1970, reads in part as follows:
“ Originally this grievance was a collection of charges by the grievant against the Director of Clinton Center, the grievant’s superior in the Center’s Resource Section and the Resource Section’s stenographer. They were dated 2/23/70 and in acknowledging their receipt on 2/25/70 the Director added that he had requested the Director of the Resource Division to.arrange the grievant’s transfer out of Clinton Center.
“Most of the grievant’s charges are of a kind that causes wonder to arise about what the grievant expected to achieve by them under the restrictions of the grievance procedure. Those about the alleged conduct of the director at the meeting in his office have their import increased only in conjunction with the memorandum of 2/25/70 as a possibility that animosity was the ground for the grievant’s transfer out of Clinton.
“ However, the grievant was not transferred out of Clinton as the result of the Director’s memorandum or because of any action by him.
1 ‘ His transfer was made by Resource on the basis of merit and not as a penalty. Resource was not a party to any friction between the grievant, the director or others in the Center. It was faced with a surplus of Resource Consultants when the grievant’s Center and two others were converted to Declaration Centers on 3/23/70.
*529 ‘ ‘ The transfer of the Resource work of these three centers to Resource’s headquarters eliminated the need for the same number of consultants as had formerly been required. In the selection made by Resource of those who would be retained the •grievant lost out. Resource made its judgment independently of the Director of the Center and at the Step II conference the grievant laid stress upon his good relations with the Resource People, at headquarters.
“ The grievance must therefore be denied.”
The step III determination of the hearing before the Director of the Office of Labor Relations was a finding that “ The grievance is denied as no violation, misinterpretation or misapplication of the contract or of any policy, rules or regulations applicable to the Department has been proven.”
Since, as stated in the determination made on step II by the Commissioner of Social Services, there was an excess of staff in the resource division as a result of the consolidation of resource work of three centers, transfers of employees were authorized by subdivision B of article XVI. Petitioner asserts, however, that this transfer was in violation of subdivision D of that article which sets forth the priorities to be followed where the department had decided it is necessary to transfer an employee, viz.:
“ 2. Non-volunteers by inverse order of seniority. * * *
“ 6. Employees who have been transferred within the past twelve (12) months.”
Upon the hearing, petitioner testified unequivocally and positively and his testimony establishes that his duties as a caseworker involved a most significant change from those required of a resource consultant. This new assignment, therefore, did not constitute a ‘ ‘ transfer ’ ’ within the definition and meaning of article XVI-A-1. Moreover, as appears from the record, the offices of three resource centers, including Clinton, were converted into a single declaration center, resulting in a surplus of resource consultants. The finding by the Commissioner of Social Services that petitioner was not transferred out of Clinton as a result of the director’s request .or memorandum or because of any action by the director may not be annulled by the court or authorize a finding that the ‘ ‘ transfer ’ ’ was punitive and not for a good and valid reason. This administrative determination on step II was wholly within the province of the Commissioner of Social Services and the Director of Lajbor Relations was warranted on step III in finding that th0re was no violation of the contract. Article XVI-B specifically authorized a transfer of ‘ ‘ employees in any title ’ ’ under *530 the circumstances here presented. Petitioner’s contention that when his resource center was transferred and merged with others, he was entitled as a matter of right to be transferred as a resource consultant because of seniority, is not supported by any provision of the contract.
II. THE ISSUE OF EXHAUSTION OF CONTRACTUAL REMEDIES
If petitioner had established that his “ transfer ” was in violation of the contract, there would remain the issue as to whether petitioner could resort to direct action in face of the step IV provision for arbitration which, pursuant to the contract, could be prosecuted only by the union, and whether there was truth in his statement that his request for arbitration was rejected by the union because of his nonmembership.
The law is well established that by union membership an employee indicates he ‘ ‘ has entrusted his rights to his union representative ” and ordinarily has no individual right to demand or control the arbitration procedures (Parker v. Borock, 5 N Y 2d 156; Matter of Soto [Goldman], 7 N Y 2d 397; Chupka v. Lorenz-Schneider Co., 12 N Y 2d 1). There is, however, a line of cases in other jurisdictions which imposes on a union the duty of fair representation to its members and that the violation of that duty permits the employee to proceed directly against the employer. The authorities are exhaustively researched and discussed in Jenkins v. Schluderberg etc. Co. (217 Md. 556) (see 45 Cornell L. Q. 25). In Jenkins, the court held that where the union acted in an arbitrary and discriminatory manner in failing to proceed on behalf of the employee against the employer, the employee may proceed directly. The court quoted (pp.' 564-565) from the article by Professor Cox in 69 Harvard L. Rev. 601, 652: “ ‘ While the rule which bars an individual employee from bringing an action on the contract when the union is unwilling to take the case to arbitration is sound if the union has made an adjustment or is satisfied that the grievance lacks merit, nevertheless it would work injustice in situations where the union is unwilling to press the claim because of indifference or reluctance to suffer the expense. Both factors come into play under open-shop contracts when a grievance having no precedent value is filed by a non-member, whose failure to pay dues means that he contributes nothing to the cost of acting as his representative. One solution would be to open arbitration proceedings to individual grievants. Another alternative is to allow the employees to bring suit against the employer and union as co-defendants upon analogy to the bill in equity Vhich the beneficiary of a trust may main *531 tain against the trustee who fails to press a claim against a third person. The suit would fail on the merits if it appeared that the collective bargaining representative had dropped the grievance for lack of merit or had negotiated a reasonable adjustment.’ ” The court also quoted (p. 565) from Professor Cox’s article, “ Individual Enforcement of Collective Bargaining Agreements,” (8 Lab. L. J. 850, 858), which is most pertinent to a situation where the employee is a nonmember of the union, as follows: “ ‘ In my opinion the presumption should be against individual enforcement of a collective bargaining agreement unless the union has unfairly refused to act * * *. The bargaining representative would be .guilty of a breach of duty if it refused to press a justifiable grievance either because of laziness, prejudice or unwillingness to expend money on behalf of employees who were not members of the union. Individual enforcement would then become- appropriate. # * * ’ (Emphasis added.) ”
The broad authority of the union as exclusive bargaining agent, even where it springs from statute, in the negotiation and administration of a collective bargaining agreement, is accompanied by the responsibility of fair representation (Humphrey v. Moore, 375 U. S. 335, 342; Vaca v. Sipes, 386 U. S. 171, 177). In Vaca, the court, in firm dictum, stated (pp. 184-186): ‘ ‘ However, if the wrongfully discharged employee himself resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted. Since the employee’s claim is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced. For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement. Republic Steel Corp. v. Maddox, 379 U. S. 650. However, because these contractual remedies have been devised and are often controlled by the union and the employer, they may well prove unsatisfactory or unworkable for the individual grievant. The problem then is to determine under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures. * * *
“We think that another situation when the employee may seek judicial enforcement of his contractual rights arises if, as is true here, the union has sole power under the contract *532 to invoke the higher stages of the .grievance procedure, and if, as is alleged here, the employee-plaintiff has been prevented from exhausting his contractual remedies by the union’s wrongful refusal to process the grievance. It is true that the employer in such a situation may have done nothing to prevent exhaustion of the exclusive contractual remedies to which he agreed in the collective bargaining agreement. But the employer has committed a wrongful discharge in breach of that agreement, a breach which could he remedied through the grievance process to the employee-plaintiff’s benefit were it not for the union’s breach of its statutory duty of fair representation to the employee. To leave the employee remediless in such circumstances would, in our opinion, be a great injustice. We cannot believe that Congress, in conferring upon employers and unions the power to establish exclusive grievance procedures, intended to confer upon unions such unlimited discretion to deprive injured employees of all remedies for breach of contract. Nor do we think that Congress intended to shield employers from the natural consequences of their breaches of bargaining agreements by wrongful union conduct in the enforcement of such agreements. Cf. Richardson v. Texas & N. O. R. Co., 242 F. 2d 230, 235-236 (C. A. 5th Cir.).
“For these reasons, we think the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee’s grievance.” (See, also, Thomas P. Lewis, Fair Representation in Grievance Administration : Vaca v. Sipes in the Sup. Ct. Rev. [1967], p. 81; see, also, dictum in Bilinski v. Delco Appliance Division, 23 A D 2d 805, mot. for lv. to app. den. 16 N Y 2d 482, citing Humphrey v. Moore, 375 U. S. 335).
The authority of the Social Service Employees Union in the case at bar arises from statute (New York City Collective Bargaining Law, Administrative Code, ch. 54; Local Laws, 1967, No. 53; and implemented by the Mayor’s Executive Order No. 52). The union by its contract undertook to represent all caseworkers as their “sole and exclusive” agent (art. I). As .such it was under a duty to entertain and consider petitioner’s alleged grievance on the merits so as to determine whether to prosecute it to arbitration if, in fact, a demand had been made upon it for such relief. The court determines, however, that the union did not violate this duty since it finds as a fact that petitioner at no time made a request of the union *533 to demand arbitration of his alleged grievances. Under the circumstances, it may not be said that petitioner has fully exhausted his contractual grievance procedures, since, as expressed in Vaca v. Sipes (supra, citing Republic Steel Corp. v. Maddox [379 U. S. 650]), the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agent as a condition precedent to proceeding against the employer. (See, also, Bilinski v. Delco Appliance Division, 23 A D 2d 805, mot. for lv. to app. den. 16 N Y 2d 482, supra, but cf. Pattenge v. Wagner Iron Works, 275 Wis. 495).
Assuming, therefore, that the petitioner was transferred in violation of the collective bargaining agreement (which the court found earlier not to be the case), it is, nonetheless, clear that the petitioner would not be entitled to relief, even under the theory of Jenkins, Vaca and allied cases, because petitioner failed to first exhaust his contractual remedies.
Accordingly, judgment is directed dismissing the petition on the merits.