**Henry G. DUCKSTEIN, Appellant,**

**v.**

**GENERAL DYNAMICS CORPORATION, FORT WORTH DIVISION, Appellee.**

**No. 17429.**

Court of Civil Appeals of Texas, Fort Worth.

Sept. 21, 1973.

Rehearing Denied Oct. 19, 1973.

James M. Bond, Fort Worth, for appellant.

McBryde & Bogle and John McBryde, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

The appeal is from a summary judgment granted on motion of the defendant General Dynamics Corporation, Fort Worth Division, against the plaintiff Henry G. Duckstein.

We affirm.

Plaintiff's allegations were that on May 27, 1967 he was a member of the Union which had a contract with the defendant affecting his interests as an employee of the defendant company; that at such time he went to Mexico on a vacation, upon termination of which he was to report back to work at 3:45 P.M. on June 6, 1967; that shortly prior to the time he was due to return to Fort Worth, Texas, his place of employment, he had a sudden attack of gout and that about June 4, 1967 his toenails became infected so that it was the advice of a Dr. Calderon, of Saltillo, Mexico, that his toenails should be surgically removed. Further, that on June 6, 1967 he sent a telegram to the defendant company reporting absence from work because of illness; that he visited the Hospital Civil de Saltillo in Saltillo, Mexico; that on June 8, 1967 he checked into the hospital and the following day had his toenails surgically removed.

Additional allegations were that on June 23, 1967 plaintiff was back home in Fort Worth and he learned that on June 6, 1967 the defendant company had sent a telegram to him at his Fort Worth address purporting to inform him that if he did not report for work by 7:00 A.M. on 8 June 1967 or furnish written medical proof of inability to do so his employment by defendant would be terminated. He also learned that on June 15, 1967 a telegram had been sent to his home address, which read: "This is to advise that you are being terminated effective 8 June for failure to furnish written medical proof of inability to work or report to work as instructed." No one had been present at plaintiff's home to receive them when the telegrams were sent. Thereafter plaintiff notified his Union of what had happened, but he could not immediately get proof from Mexico; further, that it was not customary for a sick employee to have to furnish a doctor's certificate if he missed only a few days of work.

By deposition taken of plaintiff, a part of the record before the court on the defendant's Motion for Summary Judgment, it was established that he elected to resort to the machinery provided by the contract between plaintiff's Union and the defendant company to have application in instances of grievance initiated against the company. It is undisputed that plaintiff caused the grievance procedure to be initiated. Testimony of plaintiff relative to subsequent action by him established that the processing of his grievance was, as a matter of law, ratified and adopted by him until such processing reached what is termed by the contract as the third stage. At such time memorandum agreed to by the Plant Grievance Committee representing the plaintiff's Union and a representative of the defendant company was made to reflect disposition of plaintiff's case as follows: "Plant Grievance Committtee, Stage Three. Date 16 August, 1967. Settlement of Grievance: Mr. Duckstein has not contacted the Company or the Union. Due to lack of information and co-operation from Mr. Duckstein, case closed."

On December 22, 1970 plaintiff filed suit against the defendant company in a District Court of Tarrant County, Texas. He plead the contract existent at all material times between his Union and the defendant as a basis for his cause of action for damages for breach of such contract on the part of the defendant company. He alleged damages in the amount of $49,250.00 in consequence of wrongful discharge from employment.

In the trial court the defendant company moved for summary judgment. Upon the

hearing a take-nothing summary judgment was rendered in behalf of the defendant. The plaintiff appealed, and there was submission of the case to this appellate court.

On submission it appears from the arguments of both parties that there is no question but that the leading case applicable to the question of when a litigant in position of the plaintiff is entitled to maintain his cause of action in a suit filed for that purpose is Vaca v. Sipes, 386 U.S. 171, 87 S. Ct. 903, 17 L.Ed.2d 842 (1967).

Beginning at page 184 of 386 U.S., page 914 of 87 S.Ct. and page 854 of 17 L.Ed. 2d of the opinion in Vaca v. Sipes is to be found the pertinent law applicable here. Pertinent paragraphs begin with that reading "However, if the wrongfully discharged employee himself resorts to the court . . . ." Pertinent paragraphs conclude with citations of authorities, as follows: "See generally Blumrosen, The Worker and Three Phases of Unionism: Administrative and Judicial Control of the Worker-Union Relationship, 61 Mich.L. Rev. 1435, 1482–1501 (1963); Comment, Federal Protection of Individual Rights under Labor Contracts, 73 Yale L.J. 1215 (1964). . . ."

■ The foregoing, in Vaca v. Sipes, states the general rule: Grievance procedures contracted upon by the employer and the union which represents the employee are the employee's exclusive method by which he must seek redress if so provided by the Company-Union Contract and the employee may not maintain a suit to litigate his controversy against the employer until such grievance procedures have been exhausted. The court also proceeds to demonstrate when the rule will be to the contrary because of a breach of the contract by the employer or a breach of duty owing to him by the union to fairly prosecute his grievance. In light thereof we consider the situation in the instant case in a test to decide whether, within contemplation of law, there is reason to depart from the general rule so as to permit plaintiff to maintain his suit against the employer for damages for wrongful discharge from employment without having exhausted grievance procedures so contracted. Actually this being an appeal from a summary judgment granted the defendant, the test is whether defendant's proof established as a matter of law that plaintiff cannot by evidence make out a prima facie case.

For the purpose of arriving at answer we may, and will, presume that the defendant had wrongfully discharged plaintiff. Thereupon the plaintiff invoked the quasi-judicial process contractually provided by the contract agreed upon by and between the union of which he was a member and the defendant which was his employer. There would have been no cause of action for wrongful discharge but for the agreement mentioned; it is solely because there was such, and because of the provisions of that contract, that discharge of the plaintiff from his employment might be said to have given rise to such character of action.

■ The contract, in its essential particulars, provided that the employer and the union might settle a grievance filed on behalf of an employee at any of four "stages", the last stage being arbitration procedure in the event the dispute occasioning prosecution of a grievance not be settled at stage three or some earlier stage; and further provided that if the grievance be not certified beyond stage three within 30 days after there is a decision thereat the grievance should be considered closed on the basis of such decision. Already stated was the decision and settlement of plaintiff's grievance at such stage of the grievance procedure, to-wit: "Mr. Duckstein has not contacted the Company or the Union. Due to lack of information and co-operation from Mr. Duckstein, case closed." The contractual grievance procedure included the provision, as follows: "Settlement of grievances can be reached by the Company and the Union at any stage without the acquiescence of any individual employe who may be affected di-

rectly or indirectly by such settlement." By Vaca v. Sipes it appears settled that such a contractual provision is binding and proper.

Though timely notified of the closing of the case based on his grievance the plaintiff did nothing. He had secured other employment about this time. He did not insist upon the Union processing his grievance beyond stage three, nor did he even request that such be attempted. He filed suit against the defendant December 22, 1970, after elapse of more than three years.

By his points of error plaintiff presents his case as one wherein the Union of which he was a member was weak and ineffective and not able to offer reasonable representation of him in his claim that his discharge from employment was wrongful; that under these circumstances it would be ridiculous to require that he "go through the motions" of the grievance procedure provided by the contract before resorting to the courts. Further, that the trial court erred in granting the defendant's motion for summary judgment because there was more than a scintilla of evidence that the Union was so weak and ineffective as not to be able to offer reasonable representation to its members and/or that the Union was so weak and ineffective as to make reliance on the Union's efforts ridiculous.

Plaintiff cites, in addition to *Vaca,* the case of Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). In that case Maddox brought suit in an Alabama state court against his employer for severance pay allegedly owed under the terms of the collective bargaining agreement existing between the employer and Maddox' union. Maddox made no effort to utilize the grievance procedure provided in such agreement. He was upheld in a judgment he obtained through the Alabama Supreme Court. A Writ of Certiorari was granted by the United States Supreme Court. In the opinion of that Court it was written: (p. 652, 379 U.S., p. 616, 85 S.Ct. and p. 583, 13 L.Ed.2d)

"As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress. (Footnote omitted.) If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available."

The holding of the United States Supreme Court in Republic Steel Corp. v. Maddox was one which reversed the Alabama courts upon a holding that in neither the facts nor the pleadings had Maddox shown that he could not have availed himself of the grievance procedure provided by the contract of his union with his employer. By reason thereof the holding was that he was not by his suit entitled to the judgment for severance pay granted him by the Alabama judgment.

Plaintiff additionally cites Kaufman v. Goldberg, 64 Misc.2d 524, 315 N.Y.S.2d 35, (Sup.Ct., Kings County, 1970), in which it is stated (p. 42) as follows:

". . . There is however, a line of cases in other jurisdictions which imposes on a union the duty of fair representation to its members and that the violation of that duty permits the employee to proceed directly against the employer. The authorities are exhaustively researched and discussed in Jenkins v. Schluderberg-T, etc., Co., 217 Md. 556, 144 A.2d 88, (see 45 Corn.L.Q. 25). In *Jenkins,* the court held that where the union acted in an arbitrary and discriminatory manner in failing to proceed on behalf of the employee against the employer, the employee may proceed directly. The court quoted (at pp. 564–565, 144 A.2d at p. 93) from the article by Professor Cox in 69 Harvard Law Review 601, 652:

" ' "While the rule which bars an individual employee from bringing an action

on the contract when the union is unwilling to take the case to arbitration is sound if the union has made an adjustment or is satisfied that the grievance lacks merit, nevertheless it would work injustice in situations where the union is unwilling to press the claim because of indifference or reluctance to suffer the expense. . . ." ' "

Based upon the foregoing, which as applied to the case cited constituted dictum merely, the plaintiff advances the proposition and theory that "Conceivably a union could be so weak as to be a farce and make enforced reliance on its efforts ridiculous." Plaintiff furthermore contends "the evidence offered in the two Affidavits in Opposition to Defendant's Motion for Summary Judgment raise more than a scintilla of evidence that the union was so weak that to force an employee to rely on it and have no recourse in the courts would result in great injustice."

■ The defendant has countered this argument by the claim that what plaintiff is contending is a "yes, but" plea as in confession and avoidance, which has not been made a part of plaintiff's pleadings. We do not need to refer to the pleadings to verify since this is a summary judgment case. In such a case the omission of an affirmative defense in respondent's pleading will not waive the defense, and his opponent's motion for summary judgment is properly denied when the record raises (or leaves raised) a material fact issue with respect to such affirmative defense. Bachman Center Corporation v. Sale, 359 S.W. 2d 290 (Dallas, Tex.Civ.App., 1962, writ ref., n. r. e.); 4 McDonald, Texas Civil Practice (1971 Rev.) Ch. XVII "Judgments", p. 180, Sec. 17.26.12 "(Summary Judgments) (IV) Determination of Motion".

■ In such an instance the burden is upon plaintiff to raise by evidence a fact issue upon such affirmative defense in opposition to the defense of defendant once it

has been established. "Moore" Burger, Inc. v. Phillips Petroleum Company, 492 S.W.2d 934 (Tex.Sup., 1972). In *"Moore" Burger* the affirmative defense was that of promissory estoppel, advanced in the effort to avoid the defendant's reliance upon the statute of frauds applicability of which was established as a matter of law.

■ In a test of the evidence produced by the plaintiff in the attempt to raise an issue on his affirmative defense to defendant's own defense, established as a matter of law, it is observed that the evidence has probably raised the issue of weakness and ineffectiveness of the Union. What such evidence does not raise, however, is an issue of the Union's breach of the statutory duty of fair representation, i. e. a showing that evidence exists that the Union's purported representation of plaintiff was "arbitrary, discriminatory, or in bad faith." In Vaca v. Sipes the Supreme Court took occasion to hold that exactly this is required in order to show that a union has breached its duty of fair representation of the union member. The other cases mentioned as cited by the plaintiff do not qualify or change the holding. Thus if plaintiff has merely raised only an issue of union weakness an ineffectiveness in presenting his grievance he has failed to raise the issue of that breach of duty requisite to be shown in justification of his resort to litigation in the District Court.

It takes little legal analysis to realize that to depart from the aforementioned requirement that the evidence raise the issue that union action (or non-action) was "arbitrary, discriminatory, or in bad faith" would be to substantially destroy the effectiveness of grievance procedures commonly provided by union contracts.

Except for the extended expiration of time since the event giving rise to plaintiff's complaint it might be that it would be better to modify the trial court's judgment so as to decree that the action be dismissed. Lindsey v. General Dynamics Corporation,

450 S.W.2d 895 (Waco, Tex.Civ.App., 1970, no writ history). Here no benefit to plaintiff could accrue by such reformation.

Judgment is affirmed.